**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RAFAEL COLLADO, | Civil Action No.: 16-604 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| B'WAY CORPORATION, JOHN DOES I-X, JOHN DOES CORPS. I-X. | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss Plaintiff Rafael Collado's Complaint, filed by Defendant B'Way Corporation pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5). Plaintiff has opposed this motion (ECF No. 15), and Defendant has replied to same (ECF No. 16). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Court grants Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim.

## BACKGROUND

Plaintiff Rafael Collado commenced this action against his former employer, B'Way Corporation (hereinafter "B'Way" or "Defendant") on December 16, 2014 in the Superior Court of New Jersey, Law Division, Middlesex County. (ECF No. 1 ¶ 1). On February 3, 2016, Defendant removed this action to the Federal District Court for the District of New Jersey on the grounds of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Id. ¶ 2).

Prior to initiating this lawsuit, Plaintiff filed a Charge with the Equal Employment

Opportunity Commission ("EEOC") as well as with the New Jersey Division of Civil Rights ("DCR"). (See ECF No. 5-1, Certification of Heather R. Boshak, "Boshak Cert.," ¶ 4, Exh. C). In the EEOC Charge, Plaintiff indicated that his former employer discriminated against him based upon his Dominican origin, in violation of Title VII of the Civil Rights Act, and that he was also discriminated against on account of his age of 62[1] in violation of the Age Discrimination in Employment Act. (Boshak Cert., Exh. C). The EEOC closed Plaintiff's file and issued him a Right to Sue letter. (Id., Exh. D). Regarding Plaintiff's Charge filed with the DCR, Defendant has represented (and Plaintiff has not refuted) that as far as Defendant is aware, the DCR has not made any decision with regards to Plaintiff's Charge. (ECF No. 5-3, Def.'s Mov. Br. at 12).

Plaintiff's Complaint asserts nine causes of action against his former employer, B'Way for alleged harassment, discrimination, and unlawful termination. (See ECF No. 1 at 11-20, "Compl."). Plaintiff alleges that he was employed by B'Way for over twenty years "without any prior record of employee misconduct" and that his employment was terminated on December 16, 2014. (Id. at 1). According to Plaintiff, his "supervisor subjected him to a series of harassing actions for several weeks and months leading up to the eventual termination of plaintiff as an employee of the company." (Id. at 1). The only specific allegation of harassment provided in the Complaint is that "Plaintiff was called into a meeting by a supervisor to explain how certain procedures had not been followed" and that "[t]he allegations in the meeting were curious and false and seemed to be created in order to deny plaintiff reappointment of tenure." (Id. at 6). Plaintiff also relies upon an employee manual which "states that employees with B'Way Corporation can only be terminated for cause and after warning procedures are followed. Reasons for termination must be specific and in writing so an employee may dispute same." (Id. at 3).

---

[1] Although Plaintiff's DCR Charge states that he was terminated at age 62, his Complaint alleges that he was terminated at age 64.

Relying on the above factual allegations, Plaintiff asserts causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing (Counts I, III), "removal without cause" (Count II), "breach of employment procedures" (Count IV), "violation of covenant of good faith and fair dealing" (Count V), intentional infliction of emotional distress (Count VI), discrimination based on age, race, color and national origin (Counts VII, VIII) and "hostile workplace" (Count IX).  Notably, Plaintiff's Complaint does not cite to any particular State or Federal statutes under which he brings claims.

Defendant filed the pending motion to dismiss Plaintiff's Complaint for failure to state a claim on February 24, 2016 (ECF No. 5).  Plaintiff filed opposing papers on April 5, 2016 (ECF No. 15).  However, Plaintiff's opposition brief fails to offer even a single argument as to why Plaintiff has sufficiently stated a claim as to any of the nine causes of action he asserts in his Complaint.  Instead, Plaintiff argues that the motion to dismiss is premature because "Defendant brings this motion without any discovery being conducted and asks the Court to short circuit the normal litigation process based on the pleadings alone." (ECF No. 15, "Pl.'s Opp. Br." at 15).  Plaintiff's argument does not hold water, however, as Federal Rule of Civil Procedure 12(b) expressly requires that a motion to dismiss for failure to state a claim upon which relief can be granted must be made before a defendant files a responsive pleading.  The remainder of Plaintiff's opposition brief recites the standard for a summary judgment motion, which is not even before this Court. (See Pl.'s Opp. Br. at 14-18).  Defendant replied to Plaintiff's opposition on April 12, 2016. (ECF No. 16).  This motion is now ripe for the Court's adjudication.

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is not the role of the Court to determine whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). The Court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## ANALYSIS

### A. Plaintiff's Claims of Breach of Contract (Count I) and Breach of the Implied Covenant of Good Faith and Fair Dealing (Counts III, V) are Dismissed for Failure to State a Claim

Defendant argues that Plaintiff has failed to state a claim for his contract-based claims as he has not even alleged the existence of a contract. The Court agrees.

To survive dismissal of a breach of contract claim under New Jersey law, a plaintiff must allege "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the

plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's,* 199 N.J. Super. 212 (N.J. Super. Ct. App. Div. 1985)).

With regards to Counts I (breach of contract), Plaintiff has failed to allege "the existence of a contract between" himself and Defendant. *E.P. Donnelly, Inc.*, 737 F.3d at 900. Instead, Plaintiff merely states that at the time he was fired, he "was earning a salary based on his longstanding service with the [D]efendant" and that he had worked for Defendant for over twenty years. (Compl. at 2). Thus, Defendant accurately argues that "[t]here is not one fact sufficient to put B'Way on notice as to what contract Plaintiff is referring, nor how that contract was allegedly breached." (Def.'s Mov. Br. at 5).

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count III) is similarly deficient for failure to plead the prerequisite contractual relationship. The New Jersey Supreme Court has made clear that, "[i]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.,* 172 N.J. 327, 345 (2002) (quoting *Noye v. Hoffman-La Roche, Inc.*, 238 N.J. Super. 430, 434 (App. Div. 1990)); *see also Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). As discussed above, Plaintiff has failed to sufficiently plead the prerequisite contractual relationship with Defendant. Accordingly, Plaintiff's claims for breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count III) are dismissed for failure to state a claim.

In Count V, Plaintiff alleges that an employee manual issued by Defendant "created an implied and/or express manual of good faith and fair dealing." (Compl. at 4). Plaintiff further alleges that "Defendant's decision to terminate Plaintiff was in violation of this covenant and in bad faith." (*Id.*). As to Plaintiff's allegation that the manual created an "implied contract,"

Defendant notes that the referenced employee manual clearly states that it is not a contract of employment and that employees are at-will and therefore may be terminated at any time for a lawful reason. (Def.'s Mov. Br. at 6-8). Plaintiff has not responded to this argument.

The New Jersey Supreme Court has held that "[a]n effective disclaimer by the employer may overcome the implication that its employment manual constitutes an enforceable contract of employment." *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 412 (1994). Moreover, "[t]he purpose of such a disclaimer is to provide adequate notice to an employee that she or he is employed only at will and is subject to termination without cause." *Id.* To be clear, "[t]he provisions of the manual concerning job security shall be considered binding unless the manual prominently and unmistakably indicates that those provisions shall not be binding or unless there is other similar proof of the employer's intent not to be bound." *Woolley v. Hoffman-La Roche, Inc.*, 99 N.J. 284, 307 (1985).

The Court agrees with Defendant that its employee manual makes clear that it is not an employment contract. For example, in the "Acknowledgement of Receipt of Employee Handbook" section, the employee is asked to sign that he "understand[s] that this Handbook does not create a contract of employment and that it does not create a contact for benefits" and that he "further understand[s] and agree[s] that, at [the employee's] option or the Company's option, [the employee's] employment, compensation, and benefits may be terminated at any time, with or without cause." (Boshak Cert., Exh. B, "Manual" at 2). Additionally, in its "Introduction," the manual provides in bold font: "This Handbook does not create a contract, express or implied, for any purpose, specifically including, but not limited to, . . . employment duration." (*Id.* at 6). Finally, the manual states that "[n]othing in this policy alters the employee's at-will status, and the employee may be terminated at any time for any lawful reason." (*Id.* at 19). Plaintiff has not

6

refuted the legal significance of these disclaimers.

Accordingly, just as Counts I and III are dismissed for failure to plead the necessary contractual relationship, Count V is likewise dismissed because the employee manual does not amount to a contract between the parties.

### B. Counts II and IV of Plaintiff's Complaint are Dismissed for Failure to Plead a Valid Cause of Action

In Count II of his Complaint, Plaintiff purports to bring a claim for "removal without cause." (Compl. at 2). In Count IV, Plaintiff purports to bring a claim for "breach of employment procedure." (Compl. at 3). Regardless of the factual allegations underlying Counts II and IV, neither "removal without cause" nor "breach of employment procedure" are cognizable causes of action. Accordingly, Counts II and IV are dismissed for failure to state a proper cause of action.

That said, were the Court to liberally construe Plaintiff's Complaint (as it is not required to do, given that Plaintiff is in fact represented by an attorney), the Court would read the allegations in Counts II and IV of the Complaint as alleging a breach of contract based upon Defendant's alleged violations of the terms of its employee manual.[2] However, as discussed above, the employee manual sufficiently disclaims its contractual status. Therefore, even giving Plaintiff the benefit of the doubt that he intended to assert a breach of contract claim premised upon the employee manual, Plaintiff has failed to state a claim for same.

For the above reasons, the Court grants Defendant's motion to dismiss Counts II and IV of Plaintiff's Complaint.

### C. Count VI is Dismissed for Failure to State a Claim

---

[2] In particular, Plaintiff states that B'Way maintains an employee manual which "states that employees with B'Way . . . can only be terminated for cause and after warning procedures are followed. Reasons for termination must be specific and in writing so an employee may dispute same." (*Id.*). Plaintiff also alleges that the employee manual is an "implied contract." (*Id.*).

In Count VI of the Complaint, Plaintiff attempts to plead a claim of intentional infliction of emotional distress ("IIED"). (Compl. at 4-5). Defendant contends that dismissal of this claim is warranted because Plaintiff "does not state any facts to support a finding [of IIED] and because termination, absent more, does not give rise to a claim for IIED." (Def.'s Mov. Br. at 10). The Court agrees.

"Generally speaking, to establish a claim for [IIED under New Jersey case law], the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc.*, 554 A.2d 857, 863 (1988). More specifically,

> the plaintiff must [initially] prove that the defendant acted intentionally or recklessly. For an intentional tort to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow.
>
> Second, the defendant's conduct must be extreme and outrageous. The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Third, the defendant's actions must have been the proximate cause of plaintiff's emotional distress. Fourth, the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it.

*Id.* at 864 (quotations and citations omitted).

Plaintiff has plainly not plead any of these elements of an IIED claim. Plaintiff merely alleges that his "employment . . . and his position within the organization were of great mental concern to [P]laintiff," that he "derived self-respect, self-confidence and personal satisfaction from his position and from the confidence that upon securing his tenure, his future was secure," that Defendant was aware of Plaintiff's dedication and emotional investment into the Company, and that he "suffered emotional distress, humiliation and loss of income and benefits" as a proximate

result of defendant's actions. (Compl. at 4-5). Plaintiff has not alleged intentional and outrageous conduct at the hands of Defendant, nor has Plaintiff alleged any psychological impact aside from general "emotional distress" and "humiliation."

Accordingly, Plaintiff's claim of IIED is appropriately dismissed for failure to state a claim.

### D. Counts VII ("age discrimination"), VIII ("discrimination as to race, color, origin" and IX ("hostile workplace") are Dismissed for Failure to State a Claim

Plaintiff alleges claims for "age discrimination," "discrimination as to race, color, origin" and "hostile workplace," without identifying any particular statute under which he seeks relief. (Compl. at 5-6). In support of these charges, Plaintiff alleges only: that he is Dominican; that a white supervisor was responsible for his termination; that he was once called into a meeting by a supervisor who advised him that he had not followed appropriate procedures; that "[t]he allegations made in this meeting were curious and false and seemed to be created in order to deny plaintiff reappointment and tenure," and; that he was terminated at age sixty-four. (Id.).

Defendant argues that Plaintiff has failed to state a claim for relief for discrimination and termination based upon his age, color or national origin "because Plaintiff simply pled his age, 64, without anything more and does not even allege that his age, race (not identified), color (not identified) and/or national origin (not identified) played any role in B'Way's decision to terminate his employment." (Def.'s Mov. Br. at 11). The Court agrees. Regardless of the statute under which Plaintiff seeks relief, a party attempting to prove employment discrimination based upon a protected trait must show more than membership in a protected class and an employment termination. That is, a plaintiff must allege that he or she faced an adverse employment decision because of his or her protected characteristic. Plaintiff has not done so.

Defendant further argues that to the extent Plaintiff intended to bring claims under Title

VII of the Civil Rights Act, Plaintiff's lawsuit is untimely. (Def.'s Mov. Br. at 12-13).   Before

filing a suit for Title VII employment discrimination in federal court, a plaintiff "must first file a

charge of discrimination with the EEOC." *Hernandez v. Region Nine Housing Corp.*, 146 N.J.

645, 654 (1996); 42 U.S.C. § 2000e-5(b).   "Section 2000e-5(f)(1) provides that if the EEOC

dismisses a charge or takes no action within a specified period of time it 'shall notify the person

aggrieved and *within ninety days* after the giving of such notice a civil action may be brought

against the respondent named in the charge. . . .'" *Mosel v. Hills Dept. Store, Inc.*, 789 F.2d 251,

252 (3d Cir. 1986) (emphasis added).   Although "the 90-day rule is not a jurisdictional predicate,

'in the absence of a recognized equitable consideration, the court cannot extend the limitations

period by even one day.'" *Id.* at 253 (quoting *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d

143, 146 (2d Cir. 1984)).

Here, the EEOC issued Plaintiff a Right to Sue letter on November 13, 2014 (Boshak Cert.,

Exh. D); however, Plaintiff did not file the instant lawsuit until December 16, 2015—well after

ninety days after he received the Right to Sue letter from the EEOC.   Nor has Plaintiff attempted

to refute Defendant's claim that his Title VII claims are untimely.   Accordingly, to the extent

Plaintiff sought to bring claims under Title VII for employment discrimination, these claims are

time-barred and are dismissed *with prejudice.*

To the extent that Plaintiff intended to assert causes of action arising under New Jersey

Law Against Discrimination ("LAD"), Defendant argues that these claims must be dismissed

because Plaintiff's Charge remains pending before the New Jersey Division of Civil Rights

("DCR"). (Def.'s Mov. Br. at 12).   Pursuant to the applicable State statute, N.J.S.A. 10:5-27, the

procedure permitting DCR review of a claim of civil rights violations  "shall, while pending, be

exclusive; and the final determination therein shall exclude any other action, civil or criminal,

which may exist independently of any right to redress against or specific relief from any unlawful employment practice or unlawful discrimination." N.J.S.A. 10:5-27; *see also Rodriguez v. Raymours Furniture*, 436 N.J. Super. 305, 320-22 (App. Div. 2014). Therefore, "the LAD requires a complainant to make an election of remedies between either the DCR or the Superior Court." *Hernandez*, 146 N.J. at 654-55. That is, once a claimant choses to bring a Charge with the DCR, the claimant may not file a lawsuit while the Charge is pending. *Aldrich v. Manpower Temporary Serv.*, 277 N.J. Super 500, 505 (N.J. Super. Ct. App. Div. 1994). Here, Defendant states, and Plaintiff has not represented otherwise, that Plaintiff's DCR Charge remains pending. Accordingly, absent a showing that Plaintiff has "withdraw[n] the administrative complaint before final disposition," to the extent Plaintiff intended to assert his discrimination claims under the LAD, these claims appear to be barred at this juncture.[3] *See Aldrich*, 277 N.J. Super. at 505.

For these reasons, Counts VII, VIII and IX of Plaintiff's Complaint are dismissed.

## CONCLUSION

For the reasons stated herein, the Court grants Defendant's motion to dismiss Plaintiff's Complaint. An appropriate Order accompanies this Opinion.

DATED: April __19__, 2016

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

---

[3] Notably, "an unfavorable ruling from the DCR . . . does not preclude an action in Superior Court for the same relief." *In re Nance*, 2014 WL 3818677, *5 (N.J. Super. Ct. App. Div. Aug. 5, 2014). Thus, "[t]he 'remedy choices are complementary, but mutually exclusive.'" *Id.* (quoting *Hernandez*, 146 N.J. at 652).